UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LEINAD, INC.                          :
dba KAHOOT'S SHOWGRILL                      Case No.
                                     :
        Plaintiff,
                                     :
V.
                                     :
TOWN OF EAST HARTFORD,
CONNECTICUT, a Connecticut           :
Municipal Corporation
                                     :    DECEMBER 29, 2008
        Defendant.
                                     :

## COMPLAINT FOR DECLARATORY, INJUNCTIVE AND MONETARY RELIEF

Comes now Plaintiff Leinad, Inc. dba Kahoot's Showgrill who for its complaint against Defendant Town of East Hartford, Connecticut states as follows:

### PRELIMINARY STATEMENT

1. This is an action under the laws and Constitution of the United States and the State of Connecticut alleging that the Town of East Hartford, Connecticut, by and through its Town Council, seeks to impose both an impermissible and unconstitutional prior restraint and additional burdensome and unjustified regulations on the presentation of non-obscene, adult-oriented forms of expression presumptively

1

protected by the First Amendment to the United States Constitution  and related provisions of the Connecticut Constitution by, among other things, enacting an amendment to the East Hartford Code of Ordinances to regulate and license adult-oriented businesses and their employees.  By this complaint, Plaintiff challenges the constitutionality of that amendment on its face and as it will be applied to Plaintiff.

### JURISDICTION

2. Jurisdiction is conferred on this Court for the resolution of the substantial constitutional questions presented here by virtue of 28 U.S.C. §1331 and 28 U.S.C. §1343(3), the latter of which provides, in pertinent part, that the district courts shall have original jurisdiction over any civil action authorized by law to be commenced by any person:

> "To redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States. . . ."

3. The statutory law which further authorizes the institution of this suit is 42 U.S.C. §1983, which provides, in part:

> "Every person who, under color of any statute, ordinance, regulation, custom or usage, or any state or territory subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privilege or immunities

2

> secured by the Constitution and the laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

4.    The prayer for declaratory relief is predicated upon Rule 57 of the Federal Rules of Civil Procedure, as well as 28 U.S.C. §2201, which provides that:

> ". . .any Court of the United States upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. . . ."

5.    The jurisdiction of the Court to grant injunctive relief is conferred to the Court by 28 U.S.C. §2202, which provides:

> "Further necessary or proper relief on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

6.    The jurisdiction of the Court to assume supplemental jurisdiction for state law claims is conferred under 42 U.S.C. 1367(a).

7.    Authorization for the request of attorney's fees and costs is conferred by 42 U.S.C. §1988.

8.    To the best of Plaintiff's knowledge and belief, no other action, civil or criminal, is pending in any state court involving the Plaintiff regarding the specific

3

activities and events at issue here.

9.      This suit is authorized by law to redress deprivations under color of state law of rights, privileges, and immunities secured by the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution.

10.     Venue in this Court is appropriate pursuant to 28 U.S.C. §1391(b) and (c), as the various acts complained of occurred, and the Defendant is located, within the District of Connecticut.

### PARTIES

11.     Plaintiff Leinad, Inc. dba Kahoot's Showgrill ("Kahoot's") is a Connecticut corporation authorized to do business in the State of Connecticut and is the tenant of a building located at 639 Main Street, East Hartford, Connecticut 06108, wherein it operates Kahoot's.

12.     Defendant Town of East Hartford, Connecticut is a municipal corporation organized and operating under the laws of the State of Connecticut.

### STATEMENT OF THE CASE

13.     Kahoot's presents, among other entertainment, semi-nude dance performances that are presumptively entitled to constitutional protection. Kahoot's has been in operation at its present location since 1991.

4

14.     On August 26, 2008, long after Kahoot's began offering live entertainment to the consenting adult public, the East Hartford Town Council amended its Code of Ordinances to include Article 7, Sections 8-60 through 8-79 ("the Ordinance").[1] The Ordinance contains broad and sweeping provisions targeting every aspect of Kahoot's operation, including the interior configuration of its business premises, the manner in which its entertainers may perform on stage and for patrons, and the content of advertising for the business. The Ordinance also requires the business, as well as its managers, employees, and independent contractors, to obtain an adult business license prior to engaging in protected expression.

15.     Defendant contends that Plaintiff is subject to the licensing and regulatory provisions of the Ordinance, which have been and will be in the future administered and/or enforced by the Defendant through its agents, employees, and representatives. All of the actions of these individuals and the attempted enforcement of the licensing and regulatory scheme by them, have been and will be done in the course and scope of their official duties and under color of state law.

---

[1] A copy of the Ordinance is attached to this Complaint and is incorporated in its entirety by reference.

5

16.    Plaintiff avers that the Ordinance is a means and a tool to put it out of business and will be enforced by the Defendant using unconstitutional means.  The Ordinance is not content-neutral law, but is legislation clearly aimed at the content of First Amendment materials and expression, and is a means of harassing and closing certain entertainment facilities and denying a livelihood to entertainers and others subject to the Ordinance who are providing entertainment presumptively protected by the First Amendment.  The right to engage in protected expression is a fundamental right guaranteed by the First Amendment to the United States Constitution, as applied to the State of Connecticut by the Fourteenth Amendment.

17.    The Defendant has threatened to enforce the Ordinance against the Plaintiff.  These actions have been taken under color of law and on behalf of the Defendant Town of East Hartford.  Future action by the Defendant to enforce the Ordinance has the effect of precluding the exercise of First Amendment protected activities; denied the Plaintiff and its employees, customers and entertainers their rights to engage in constitutionally protected speech and expression related activities; to lawfully earn a living; to freely associate; to be free from unreasonable and warrantless searches; to due process; to equal protection created under the United

6

State Constitution; and will result in other and significant constitutional deprivations to the Plaintiff and others specified herein.

18.     The general regulatory provisions of Article 7, Sections 8-60 through 8-79 impose burdensome and unjustified requirements on persons seeking to operate a sexually oriented business.  Because of these burdens and its many flaws, the Ordinance violates the First Amendment and other associated rights in a variety of ways. Among the burdensome and draconian regulations contained in the Ordinance are the following:

A.     Section 8-61 of the Ordinance defines various terms contained in the Ordinance.  For example, "sexually oriented cabarets" are defined in § 8-61(15) as "any nightclub, bar, restaurant or similar enterprise, whether or not alcoholic beverages are served, in which there is live sexually oriented entertainment or live semi-nude entertainment." Pursuant to § 8-61(11), a person appears in a semi-nude state when the entire body is exposed except for completely and opaquely covered human genitals, pubic regions, buttocks, anus, and the entire

7

areola of the female breasts.  A person further engages in sexually oriented entertainment when he or she exposes his or her human genitals, pubic region, buttocks, anus, or the areola of the female breasts or human male genitals in a discernibly turgid state, even if completely and opaquely covered.  *See* § 8-61(5), (13).  Section 8-71(a) prohibits live, sexually oriented entertainment as defined.  The Ordinance further provides that even if the Plaintiff or others similarly situated or otherwise subject to the Ordinance and not a part of this lawsuit limited entertainers to performing with substantial body covering (i.e. bathing suits) that they would still be subject to the draconian and burdensome regulations.  The definition of a "sexual activity" in § 8-61 (12) includes the mere fondling or touching of the human genitals, pubic region, buttocks or female breasts regardless of the amount of clothing worn by an entertainer.  Section 8-71(b) requires an employee to complete an application for a license and requires an

8

employee to complete an application which contains personal information as to the employee which information is not exempt under the Connecticut Freedom of Information Act Chapter 14 Section 1-200 et. seq. of the Connecticut General Statutes. These definitions, as well as others contained in the Ordinance, are unconstitutionally vague and overbroad and otherwise in violation of the First and Fourteenth Amendments to the United States Constitution.

B.     Section 8-69 of the Ordinance is likewise unconstitutionally flawed in that it places locational restrictions on adult oriented businesses operating in East Hartford. Specifically, § 8-69(a) incorporates existing zoning regulations and § 8-69(b) imposes a requirement that adult businesses locate at least 250 feet away from educational institutions. However, the Ordinance fails to make the findings required to constitutionally impose such a

9

restriction and is not supported by sufficient evidence of secondary effects.

C.   Section 8-70(a)(6) of the Ordinance violates the First Amendment by placing overly restrictive regulations on advertising and signage by adult businesses.   These restrictions prohibit an adult business from providing truthful, nonmisleading speech about a lawful product in violation of commercial speech principles of the First Amendment.

D.   Section 8-65(h) permits warrantless governmental inspections of the entire premises of an adult business at any time the business is open.  This provisions violates the Fourth Amendment prohibition against unreasonable searches and seizures.

E.   Sections 8-63 through 8-68 establish the procedures by which a sexually oriented business license must be acquired and maintained.   These provisions are unconstitutional because they fail to contain the necessary

10

safeguards required under the prior restraint doctrine of the First Amendment. In addition, the application requirements contained in § 8-64(a)- violate the First and Fourteenth Amendments and related rights to privacy because the Ordinance fails to set forth either a substantial governmental interest in the required information or a substantial nexus between that governmental interest and the information required to be disclosed.

F.    Although not contained in the Ordinance, the Town has subsequently adopted a schedule for the payment of licensing fees. These fees constitute a prohibited tax on protected expression and vastly exceed the administrative costs inherent in enforcing the Ordinance. Thus, the licensing fees are excessive and not related to any legitimate government interest and not commensurate with the costs of a constitutional license application process.

11

G.   Section 8-64(c)(11) of the Ordinance requires an applicant for an operator's permit to submit a accurately scaled drawing of the property.  Such drawings are expensive, unnecessary, and only add to the exorbitant cost of applying for a permit.  Moreover, the Ordinance does not state the purpose for which such drawings are required.  As such, this provision is merely punitive and surely without a substantial government interest.

H.   Once a sexually oriented business, manager, employee, or contractor obtains a license, he or she faces suspension, revocation, or non-renewal of the permit if he or she does not adhere to certain regulations.  The procedure for these adverse licensing actions is outlined in § 8-67.  This provision gives the Director unbridled discretion in violation of the First Amendment and affects a regulatory taking of private property without just compensation in violation of the Fifth Amendment.  In addition, these procedures lack procedural due process and impose vicariously liability

12

upon business owners for the actions of others without a scienter requirement, both in violation of the Fifth and Fourteenth Amendments.

I.   Section 8-64(d)(2)-(4) prohibits applicants with various criminal convictions from obtaining a license in violation of the First and Fourteenth Amendments.

J.   Section 8-71(a)(1)-(8) places invalid time, place, and manner restrictions upon the exercise of presumptively protected dance performances.  These restrictions include, but are not limited to, the prohibition of dancer-patron physical contact, a rule that dancers may not also serve as waitresses or bartenders, and a ban on direct tipping. Section 8-71(a)(2) further imposes a requirement that stages be at least eighteen inches high and that dancers and patrons be separated by a distance of at least ten feet.  These restrictions are not supported by a substantial governmental interest, are content-based, and are more restrictive than necessary to achieve the government's

13

objectives.    In  addition,  these  restrictions  are  so burdensome  on  Plaintiff's  business  in  particular  that applying  them  to  Plaintiff  would  diminish  the  quantity  of protected  expression  that  can  occur  within  Plaintiff's business  in  violation  of  the  First  and  Fourteenth Amendments.

## STATEMENT OF THE CLAIM

19.    Each of the foregoing paragraphs is incorporated by reference as if fully rewritten.

20.    The Ordinance is unconstitutional on its face and as applied under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and related provisions of the Connecticut Constitution for the reasons set forth in ¶ 9(A) - (J) above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

1.    A declaration that East Hartford Code of Ordinances, Article 7, Sections 8-60 through 8-79, is unconstitutional under the First, Fourth, Fifth and Fourteenth Amendments both on its face and as it will be applied to Plaintiff;

14

2.    A permanent order restraining Defendant and its officers, agents, employees, representative, and all persons acting by, through, and for it from enforcing, applying, and implementing East Hartford Code of Ordinances, Article 7, Sections 8-60 through 8-79;

3.    An award of Plaintiff's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

4.    An award of such other relief in law and equity that this Court deems just and proper under the circumstances.

Respectfully submitted,

DANIEL A. SILVER (Fed. Ct. # 08183)
SILVER & SILVER LLP
One Liberty Square
New Britain, CT 06051
Telephone: (860) 225-3518

JENNIFER M. KINSLEY (Fed. Ct. # 27849)
SIRKIN PINALES & SCHWARTZ LLP
105 West Fourth Street, Suite 920
Cincinnati, Ohio 45202
Telephone (513) 721-4876

Counsel for Plaintiff Leinad, Inc. dba Kahoot's Showgrill

15

EXHIBIT

A

This is to certify that the East Hartford Town Council, in session on Tuesday, August 26, 2008, voted that Chapter 8 of the Code of Ordinances, Town of East Hartford, Connecticut, is hereby amended by adding Article 7, Section 8-60 through Section 8-79, which reads as follows:

## ARTICLE 7. SEXUALLY ORIENTED BUSINESSES

Section 8-60.  Purpose and Intent

    (a) It is the purpose of sections 8-60 through 8-79, inclusive, to regulate sexually oriented businesses in order to promote the health, safety, and general welfare of the citizens of the Town of East Hartford, and to establish reasonable and uniform regulations to prevent the deleterious secondary effects of sexually oriented businesses within the town. The provisions of sections 8-60 through 8-79, inclusive, have neither the purpose nor effect of imposing a limitation or restriction on the content or reasonable access to any communicative materials, including sexually oriented materials. Similarly, it is neither the intent nor effect of sections 8-60 through 8-79, inclusive, to restrict or deny access by adults to sexually oriented materials protected by the First Amendment, or to deny access by the distributors and exhibitors of sexually oriented entertainment to their intended market. Neither is it the intent nor effect of sections 8-60 through 8-79, inclusive, to condone or legitimize the distribution of obscene material.

    (b) Based on evidence of the adverse secondary effects of adult uses presented in hearings and in reports made available to the Town Council, and on findings, interpretations, and narrowing constructions incorporated in the cases of *City of Littleton v. Z. J. Gifts D-4, LLC*, 541 U.S. 774 (2004); *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002); *City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986); *Young v. American Mini Theatres*, 427 U.S. 50 (1976); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991); *California v. LaRue*, 409 U.S. 109 (1972); and *Charette v. Town of Oyster Bay*, 2 Fed.Appx. 112 (2d Cir. 2001); *Beal v. Stern*, 184 F.3d 117 (2d Cir. 1999); *Buzzetti v. City of New York*, 140 F.3d 134 (2d Cir. 1998); *Marty's Adult World v. Town of Enfield*, 20 F.3d 512 (2d. Cir 1994); *Hickerson v. City of New York*, 146 F.3d 99 (2d Cir. 1998); *Casanova Entertainment Group, Inc. v. City of New Rochelle*, 165 Fed.Appx. 72 (2d Cir. 2006); *United States v. Kinzler*, 55 F.3d 70 (2d Cir. 1995); *Gold Diggers, LLC v. Town of Berlin*, 469 F.Supp. 2d 43 (D. Conn. 2007); *Centerfolds, Inc. v. Town of Berlin*, 352 F.Supp. 2d 183 (D. Conn. 2004); *Derusso v. City of Albany*, 205 F.Supp. 2d 16 (N.D.N.Y. 2002); *Gammoh v. City of La Habra*, 395 F.3d 1114 (9th Cir. 2005); *World Wide*

*Video of Washington, Inc. v. City of Spokane*, 368 F.3d 1186 (9th Cir. 2004);
*Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702 (7th Cir. 2003); *Andy's
Rest. & Lounge, Inc. v. City of Gary*, 466 F.3d 550 (7th Cir. 2006); *Heideman
v. South Salt Lake City*, 165 Fed.Appx. 627 (10th Cir. 2006); *H&A Land Corp.
V. City of Kennedale*, 480 F.3d 336 (5th Cir. 2007); *DLS, Inc. v. City of
Chattanooga*, 107 F. 3d 403 (6th Cir. 1997); *Colacurcio v. City of Kent*, 163
F.3d 545 (9th Cir. 1998); *Déjà vu of Nashville, v. Metro. Gov't of Nashville &
Davidson County*, 466 F.3d 391 (6th Cir. 2006); *Dr. John's, Inc. v. City of Roy*,
465 F.3d 1150 (2006); *ASF, Inc. v. City of Seattle*, 408 F.2d 1102 (2005);
*Sensations, Inc. et al. v. City of Grand Rapids, et al.*, United States Court of
Appeals, (6th Cir. 5/20/08) and based upon reports concerning secondary
effects occurring in and around sexually oriented businesses, including, but
not limited to, Austin, Texas – 1986; Indianapolis, Indiana – 1984; Houston,
Texas – 1983; McCleary Report – 2004; Littleton, Colorado – 2004;
Oklahoma City, Oklahoma – 1986; Dallas, Texas – 1997, 2004; New York
Times Square – 1994; Garden Grove, California – 1991; Phoenix, Arizona –
1979, 1995-1998; Los Angeles, California – 1977; Whittier, California – 1978;
Amarillo, Texas – 1977; "Do Off-site Adult Businesses Have Secondary
Effects?", McCleary, Weinstein, 11/14/07; "Rural Hotspots – The Case of
Adult Businesses", McCleary, 2008; "NLC Summaries of 'SOB Land Use'
Studies. Crime Impact Studies by Municipal and State Governments on
Harmful Secondary Effects of Sexually Oriented Businesses", National Law
Center, 1996; "How to Regulate Adult Entertainment by Zoning", Laurien,
Delaware County Regional Planning Commission; "Adult Entertainment, Staff
Report", St. Paul, MN 1983, 1988; "Report to: The American Center for Law
and Justice on the Secondary Impacts of Sex Oriented Businesses", Hecht,
1996 and the Report of the Attorney General's Working Group On The
Regulation of Sexually Oriented Businesses, (June 6, 1989, State of
Minnesota), the Town Council finds:

(1) Sexually oriented businesses, as a category of commercial uses, are
associated with a wide variety of adverse secondary effects including,
but not limited to, personal and property crimes, prostitution,
lewdness, public indecency, unsanitary conditions, potential spread of
disease, obscenity, illicit drug use and drug trafficking, negative
impacts on surrounding properties, blight, litter, and sexual assault
and exploitation; and

(2) Each of the foregoing negative secondary effects constitutes a harm
which the Town has a substantial government interest in preventing
or abating. This substantial government interest in preventing
secondary effects, which is the town's rationale for the provisions of
sections 8-60 through 8-79, inclusive, exists independent of any
comparative analysis between sexually oriented and non-sexually
oriented businesses. Additionally, the Town's interest in regulating
sexually oriented businesses extends to preventing future secondary
effects of either current or future sexually oriented businesses that
may locate the in the Town. The Town finds that the cases and
documentation relied on in the provisions of sections 8-60 through 8-
79, inclusive, are reasonably believed to be relevant to said
secondary effects.

Section 8-61. Definitions

As used in section 8-61 through section 8-79, inclusive:

    (1) "applicant" means a person signing an application for a license to be issued pursuant to section 8-65;

    (2) "employee" means any person who performs any service on the licensed premises on a full time, part time or contractual basis, whether or not such person is denominated an employee, independent contractor or agent. Employee does not include a person exclusively on the licensed premises for regular maintenance of the licensed premises or for the delivery of goods to the licensed premises;

    (3) "licensed premises" means the entire building or structure used for a sexually oriented business and the area adjacent to such building or structure, including areas designated for the parking of motor vehicles by patrons of a sexually oriented business and other areas under the ownership, control or supervision of the licensee;

    (4) "licensee" means any person granted a license pursuant to section 8-65;

    (5) "live sexually oriented entertainment" means any on-site, live performance by a person which contains or is characterized by the person's exposure of sexual anatomical areas or the performance of sexual activity;

    (6) "live semi-nude entertainment" means any on-site, live performance by a person which contains the person's exposure of a semi-nude body;

    (7) "manager" means a person with authority to formulate policy for a sexually oriented business, to supervise employees of such business, or with overall responsibility of the operation of such business, including the on-site manager and all officers, directors, members or partners of the applicant;

    (8) "massage parlor" means any establishment having a fixed business where any person engages in or carries on, or permits to be engaged in or carried on, any method of vibrating or stimulating of the external soft parts of the body with the hands or with the aid of any mechanical or electric apparatus or appliance with or without any supplementary aids such as rubbing alcohol, liniments, antiseptics, oils, powders, creams, lotions, ointments or other similar preparations commonly used in this practice, whether or not such business is operated on a house call or out call basis, and any establishment advertised or listed under the heading of "massage" or "massage parlor". Massage parlor shall not include an establishment where the practice of massage is: (A) in any state-licensed hospital, nursing home, clinic, medical office or rehabilitation facility; (B) by a state-licensed physician, surgeon, chiropractor, osteopath, physical therapist or massage therapist or by a registered nurse, licensed practical nurse or technician working under the supervision of such health care provider who shall be present on the licensed premises during the time the service is rendered; (C) by trainers for any

amateur or professional athlete or athletic team or school athletic program; or (4) by any state-licensed barber or beautician with regard to the massaging of the neck, face, scalp and hair for cosmetic or beautifying purposes;

(9) "masseur" means any person who, for any form of consideration, performs massage parlor activities;

(10) "media" includes any books, magazines, videos, films, DVD's, photographs, reproductions, software, hardware or web-based content or any other technological display;

(11) "semi-nude" means generally exposing the entire body except for completely and opaquely covered human genitals, pubic regions, buttocks, anus, and the entire areola of the female breasts;

(12) "sexual activity" means (A) the showing or depiction of human genitals in a state of sexual stimulation or arousal; (B) acts of human masturbation, sexual intercourse, bestiality, necrophilia, sadomasochistic abuse, fellatio, cunnilingus or sodomy; (C) the fondling or erotic touching of human genitals, pubic region, buttock or female breasts;(D) lap dancing; or (E) excretory functions as part of or in connection with any such activities;

(13) "sexual anatomical areas" means less than completely and opaquely covered human genitals, pubic region, buttocks, anus and the areola of the female breasts and human male genitals in a discernibly turgid state, even if completely and opaquely covered;

(14) "sexually oriented business" means any enterprise where a substantial or significant amount of the business or activity is associated with the performance, depiction, display or exhibition of a semi nude body, sexual activity or sexual anatomical areas and shall include sexually oriented retail stores or theaters and sexually oriented cabarets, massage parlors or live semi-nude entertainment;

(15) "sexually oriented cabarets" means any nightclub, bar, restaurant or similar enterprise, whether or not alcoholic beverages are served, in which there is live sexually oriented entertainment or live semi-nude entertainment;

(16) "sexually oriented entertainer" means any person who performs live sexually oriented entertainment or live semi-nude entertainment for compensation at any sexually oriented cabaret;

(17) "sexually oriented retail store or theater" means any enterprise which has a substantial or significant amount of its inventory or floor space for, or of its income from, (A) media or novelty items, gag gifts, toys and paraphernalia that depict sexual activity, semi-nude bodies, or sexual anatomical areas or (B) novelty items, gag gifts, toys and paraphernalia that are designed or marketed for stimulating human genital organs, sexual arousal or sadomasochistic use except for medical films or publications or art or photograph publications that devote at least twenty-five percent of the

lineage of each issue to articles and advertisements dealing with subjects of art or photography; and

(18) "significant interest" means any share or equity interest in a partnership, limited liability company, corporation, or other commercial entity, equal to ten percent or greater of the equity or voting control of such entity.

Sec. 8-62 Penalties for violation of article.

(a) In addition to any fines or penalties for violation of the provisions of section 8-61 through section 8-79, inclusive, the town may apply to the superior court for injunctive and equitable relief including reasonable attorney's fees and costs expended by the town in enforcing the provisions of these sections.

(b) The provisions of section 8-61 through section 8-79, inclusive, shall not preclude any additional enforcement action taken by any appropriate town, state or federal official conducted pursuant to any applicable ordinance, regulation or law of the town or state or the United States of America.

(c) All remedies and penalties for violation of the provisions of section 8-61 through section 8-79, inclusive shall be cumulative.


Sec. 8-63 License Required.

(a) On and after the effective date of this ordinance, no person shall engage in, conduct or carry on or permit to be engaged in, conducted or carried on, in or upon any premises in the town, the operation of a sexually oriented business without a license pursuant to section 8-65, provided any such business operating on the effective date of this act may continue to operate without such license until January 1, 2009. A license may be issued for only one sexually oriented business at each fixed location. Any person who operates more than one sexually oriented business must have a license for each such business.

(b) No person shall operate, or knowingly perform any service directly related to the operation of, any unlicensed sexually oriented business.

(c) No license issued pursuant to section 8-65 shall be sold, assigned or transferred in any way, including, but not limited to: (1) the sale, lease or sublease of the sexually oriented business; (2) the transfer of shares, securities or interests that constitute a significant interest in such business, whether by sale, exchange or similar means; or (3) the establishment of a trust, gift or other similar legal device that transfers ownership or control of such business.


Sec. 8-64. Application.

(a) Any person may submit an application on a form prepared by the town for a license to operate a sexually oriented business to the Director of Inspections and Permits, or designate, together with an application fee as set forth in the Fee Schedule prior to the

commencement of the operation of such business. The Director of Inspections and Permits, or designate, shall date stamp the application.

(b)   The application shall be signed and filed by the owner of such proposed sexually oriented business and shall also be signed by the owner of the building and property on which such business will be located. In instances where an applicant is a partnership, limited liability company or corporation, the application shall be signed and filed by each individual who holds a significant interest in the applicant. The application shall be sworn to be true and correct by all persons signing the application a violation of which shall constitute perjury or false statement.

(c)   In addition to any other information requested by the Director of Inspections and Permits, or designate, the applicant for a license shall furnish the following information:

　　　(1)   Name, business address and primary residence address of each person with a significant interest in the sexually oriented business, including any partnership, corporation, limited liability company, corporation or other legal entity. Where an interest in a partnership, limited liability company or corporation is owned by an entity rather than an individual, the application shall include the name of that entity and all individuals with a significant interest in that entity must be disclosed, regardless of how many levels of ownership, or how many levels of parent, subsidiary or affiliate relationships;

　　　(2)   The location of the sexually oriented business to be operated under such license, including the street address, legal description of the property, and telephone number, if any;

　　　(3)   The current name, and any other name previously used by such person, and address of all employees and managers of the sexually oriented business at the time of application;

　　　(4)   Written proof that all individuals listed in subdivision (1) and subdivision (3) of subsection (c) of this section are at least eighteen years of age and are either citizens of the United States or have a legal right to work at such sexually oriented business;

　　　(5)   A recent photograph of each individual signing the application;

　　　(6)   The driver's license number, if such person holds a driver's license, social security number, if any, and birth date of each individual signing the application;

　　　(7)   If the person with a significant interest is:

　　　　　(A)   A partnership, the application shall be accompanied by the partnership agreement, if any;

　　　　　(B)   A limited partnership, the application shall specify the name of the partnership, the date and state of the filing of its certificate of limited partnership, and the name and address of its statutory agent for service of process, and shall be accompanied by a copy of the partnership agreement, if any, and by evidence that such partnership is in good standing under the laws of the state;

(C) A limited liability company, the application shall specify the name of the company, the date and state of the filing of its articles of organization, and the name and address of its statutory agent for service of process, and shall be accompanied by a copy of the operating agreement, if any, and by evidence that such company is in good standing under the laws of the state;

(D) A corporation, the application shall specify the name of the corporation, the date and state of incorporation, and the name and address of its statutory agent for service of process, and shall be accompanied by a copy of its bylaws, if any, and by evidence that such corporation is in good standing under the laws of the state;

(E) Operating under a fictitious name, the application shall be accompanied by a copy of the applicant's recorded trade name certificate;

(8) The name and location of any sexually oriented business previously owned or operated by each applicant, or currently owned or operated by each applicant, in this or another municipality or state; whether the applicant has had a license for such business suspended or revoked; the dates of and reasons for such suspension or revocation; and the business entity or trade name under which the applicant operated such business that was subject to the suspension or revocation. Such business shall include any business of which the applicant was a partner, member, officer, director or shareholder;

(9) Any criminal convictions of each applicant, employee or manager of the sexually oriented business, of any crime constituting murder, felonious assault, robbery, bribery, extortion, criminal usury, arson, burglary, tax evasion, tax fraud, felonious acts of larceny, forgery, fraud in the offering, alteration of motor vehicle identification numbers, violation of any provision of chapter 420b of the Connecticut General Statutes, dependency producing drugs, illegal sale or provision of alcohol to minors, moral turpitude, prostitution, obscenity or other sex-related crimes in any jurisdiction within ten years of the date of the filing of the application. Sex-related crimes include any action which constitutes a violation of sections 53a-194, 53a-196, 53a-196a, 53a-196b; 53a-196c, 53a-196d, 53a-82, 53a-83, 53a-83a; 53a-86, 53a-87, 53a-88, 53a-89, 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a, 53a-72b and 53a-73a of the Connecticut General Statutes, or violations of other laws of other States, the essential elements of which are substantially the same as these crimes;

(10) The exact nature of the activities to be conducted at the sexually oriented business;

(11) A sketch or diagram showing the configuration of the licensed premises drawn to a six inch accuracy scale and with marked dimensions of the interior of the premises, including a statement of total floor space occupied by the business. Such sketch or diagram shall include, without limitation, all doors, windows, bars, stages, manager's stations, restrooms, dressing rooms, booths, cubicles, rooms, studios, compartments, stalls, overhead lighting fixtures and any areas where patrons are not permitted; and

(12)  A statement that each applicant is familiar with the provisions of this article, is in compliance with them, and consents to the authority of the Town in licensing and regulating the proposed sexually oriented business.

(d)  If a license to operate a sexually oriented business is granted, the applicant shall provide the Director of Inspections and Permits, or designate, any material change in information contained in the application, including but not limited to changes in significant interests, within thirty days of such change.

Sec. 8-65. Licensing procedure.

(a) Upon receipt of an application pursuant to section 8-64:

(1) the Director of Inspections and Permits, or designate, shall determine compliance of the proposed licensed premises with all applicable building codes and laws;

(2)  the Chief of Police shall determine the criminal history of each applicant;

(3)  the Fire Marshal shall determine compliance of the proposed licensed premises with all applicable fire codes and laws;

(4)  the Director of Health and Social Services shall determine compliance of the proposed licensed premises with all applicable public health codes and laws; and

(5)  the Zoning Enforcement Officer shall determine compliance of the proposed licensed premises with all applicable zoning regulations and laws and also compliance with all distance requirements set forth in section 8-69.

(b)  Within thirty days of the date the application was filed, all determinations performed pursuant to subsection (a) of this section shall be completed.  Each town official shall indicate a recommendation for approval or disapproval of the application, state the reasons for any disapproval, date it, sign it, and return such determination to the Director of Inspections and Permits, or designate. A town official shall disapprove an application if such official finds that the proposed sexually oriented business will be in violation of any provision of any statute, code, article, regulation or other law under such official's enforcement authority.

(c)  Within forty-five days of the date the application was filed, the Director of Inspections and Permits, or designate, shall render a decision approving or denying such application and shall file such decision with the town clerk and mail such decision to the applicant by certified mail, return receipt requested. If the Director of Inspections and Permits, or designate, denies the application, the Director shall state in writing the reasons for such denial. All copies of the determinations pursuant to subsection (b) of this section shall be attached to the decision.

(d)  The Director of Inspections and Permits, or designate, shall issue to the applicant a license to operate a sexually oriented business if all requirements for a sexually oriented business described in section 8-61 through section 8-79, inclusive are met, unless the Director finds that:

(1)  the applicant or any individuals disclosed under subdivision (1) or subdivision (3) of subsection (c) of section 8-64 are under eighteen years of age, except if such business will serve alcoholic beverages, then no applicant or individual shall be under twenty-one years of age;

(2)  the applicant or any other person disclosed under subdivision (1) or subdivision (3) of subsection (c) of section 8-64 has been convicted in this state of any of the crimes specified in subdivision (9) of subsection (c) of section 8-64, or convicted in another state of crimes the essential elements of which are substantially the same as the crimes specified in subdivision (9) of subsection (c) of section 8-64, regardless of the pendency of any appeal, within ten years of the date the application was filed;

(3)  within five years of the date the application was filed, an applicant or any other person disclosed under subdivision (1) or subdivision (3) of subsection (c) of section 8-64 has been denied a license by the town to operate a sexually oriented business, except for technical reasons including but not limited to denial pursuant to subsection (e) of this section, has had a license revoked by the town, or has failed to correct any material violation of section 8-61 through section 8-79, inclusive, for more than thirty days, after which the manager has received written notice;

(4)  within three years of the date the application was filed, an applicant or any other person disclosed under subdivision (1) or subdivision (3) of subsection (c) of section 8-64 has had a license to operate a sexually oriented business denied or revoked by another municipality or state except for technical reasons;

(5)  an applicant or any other person disclosed under subdivision (1) or subdivision (3) of subsection (c) of section 8-64 is overdue by more than thirty days on payment to the town of any taxes, fees, fines or other penalties relating to the sexually oriented business or the licensed premises;

(6)  the business as proposed in the application, if permitted, would not have complied with all applicable statutes, codes, ordinances, laws and regulations including, but not limited to, the fire, building, health, and zoning codes of the town, and the provisions of section 8-61 through section 8-79, inclusive. If the premises are not in compliance, the applicant shall be advised of the reasons in writing and any measures the applicant must take to bring the premises into compliance for a license to issue;

(7)  the licensed premises are not in compliance with all distance requirements set forth in section 8-69;

(8)  the applicant  has failed to complete the license application as specified in subsection (c) of section 8-64, or has provided materially false or misleading information in the application;

(9)  the application fee has not been paid;

(10)  the granting of the application would violate a statute, ordinance or court order; or

(11)  the business described in the application, if a limited partnership, limited liability company or corporation, is not in good standing under the laws of the state.

(e)  Any failure of the Director to approve or deny an application for license within forty-five days of the date on which the application was filed shall constitute a denial subject to appeal.

(f)  If the sexually oriented business application is denied except pursuant to subsection (e), the town shall retain fifty percent of the permit fee as payment for expenses incurred in the investigation of the application and shall return the remainder to the applicant.

(g)  When an application is denied solely for reasons stated in subdivision (6) of subsection (d) of this section and such violation is correctable, the applicant shall be given an additional thirty days from the date of such notification of denial to bring the licensed premises into compliance. Upon verification by the Director of Inspections and Permits, or designate, that the correction has been made, which shall be determined no later than forty-eight hours after receipt by the Director of Inspections and Permits, or designate, of written notice of such correction, a license shall be issued unless no new violations or other disqualifying factors have occurred within such thirty days.

(h)  As a condition of the license, the entire licensed premises shall be open to random physical inspections for compliance with the provisions of section 8-61 through section 8-79, inclusive, by any Town official or employee in the discharge of such official or employee's duties during all hours when the licensed premises are open for business. Any refusal to allow such an inspection shall constitute a violation of this article. This subsection shall be narrowly construed to authorize reasonable inspections of the licensed premises but not to authorize a harassing or excessive pattern of inspections.

(i)  The license, if granted, shall state the name, business and residence address of the applicant, the expiration date, the address of the sexually oriented business, and the department or public official and telephone number to whom to report any violation of the provisions of section 8-61 through section 8-79, inclusive. The license shall also include a notice that the subject premises are subject to random inspections by town official or employees of the town for compliance with the provisions of section 8-61 through section 8-79, inclusive.

(j)  The license shall be posted in a conspicuous place at or near the entrance to the sexually oriented business so that it may be easily read by the public at all times.

Sec. 8-66. Expiration and renewal.

(a)  Each license issued pursuant to section 8-65 shall expire one year from the date it is issued, unless it is renewed upon application, pursuant to section 8-64, accompanied by payment of a renewal fee as set forth in the Fee Schedule.  Such application and application fee shall be submitted to the Director of Inspections and Permits, or designate, at least thirty days before the expiration date of the license, but not more than

ninety days. If the application is filed within such time and the renewal fee paid, the Director of Inspections and Permits, or designate, shall, prior to the expiration of the previous license, renew the license for an additional one year, unless the Director of Inspections and Permits, or designate, finds any grounds for denial of the original application pursuant to subsection (d) of section 8-65. If renewed, the Director of Inspections and Permits, or designate, shall mail the renewed license to the applicant prior to the expiration date of the previous license. If not renewed, the Director of Inspections and Permits, or designate, shall mail a notice of non-renewal to the applicant by certified mail, return receipt requested, prior to the expiration date of the previous license, stating the reasons for such non-renewal.

(b)   If there are uncorrected violations of section 8-61 through section 8-79, inclusive or uncorrected violations of any fire, building, health or zoning codes or regulations, of which the applicant has received written notice, the current license shall be extended for a maximum of thirty days beyond the original expiration date in order for all corrections to be completed and inspections done to determine compliance. If the applicant does not make such corrections of violations within such thirty days, no license renewal shall be issued. The Director of Inspections and Permits, or designate, shall mail a notice of non-renewal to the applicant by certified mail, return receipt requested, within five days after the extended thirty-day period, stating the reasons for such non-renewal.

(c)   Notwithstanding the provisions in subsection (a) and subsection (b) of this section, in no instance shall a renewal be issued if within the one-year period of the previous license, such sexually oriented business has had two or more material violations of section 8-61 through section 8-79, inclusive, to which the manager has received written notice, or has had one or more uncorrected material violations of section 8-61 through section 8-79, inclusive, pending for more than thirty days.  As used in this section, "material violation" means any violation of the provisions of section 8-61 through section 8-79, inclusive, unless such violation is of a technical nature.

(d)   Should a license not be renewed for any violation of section 8-61 through section 8-79, inclusive, no license shall be issued for five years from the expiration of the previous license.


Sec. 8-67. Suspension and revocation.

(a)   The Director of Inspections and Permits, or designate, may suspend a sexually oriented business license for a period not to exceed thirty days if there are uncorrected violations of section 8-61 through section 8-79, inclusive, or uncorrected violations of any fire, building, health or zoning codes or regulations, of which the manager has received written notice, or any condition under subsection (d) of section 8-65 that constitutes grounds for denial of such license. The Director of Inspections and Permits, or designate, shall issue such suspension in writing stating the reasons therefore and shall notify the applicant by certified mail, return receipt requested, or by service at such address or at the  licensed premises. If a suspension is issued for a correctable violation, the Director of Inspections and Permits, or designate, within forty-eight hours of receipt of written notice that the correction has been made, shall verify the correction or failure to correct and shall terminate such suspension upon verification of such correction. No sexually oriented business shall continue to operate while under suspension.

(b)   The Director of Inspections and Permits, or designate, shall revoke any license if the Director finds:

    (1) any grounds for denial of such license application under subsection (d) of section 8-65;

    (2)  that materially false or misleading information or data was given on, or material facts were omitted from, any application for a sexually oriented business license;

    (3) within a one-year period there have been two or more material violations of this article, to which the manager has received written notice;

    (4) there have been one or more uncorrected material violations of this article pending for over thirty days, to which the manager has received written notice;

    (5)  there has been a failure to correct within thirty days any violation for which the license was suspended pursuant to subsection (a) of this section;

    (6)  there has been a violation of subsection (c) of section 8-64;

    (7)  the applicant or any other person disclosed under subdivision (1) and subdivision (3) of subsection (c) of section 8-64, or any manager has knowingly allowed any illegal activity to occur on the licensed premises including, but not limited to, prostitution, gambling, or the possession, use or sale of controlled substances; or

    (8)  the applicant or any other person disclosed under subdivision (1) and subdivision (3) of subsection (c) of section 8-64, or any manager has knowingly operated the sexually oriented business while the business's license was under suspension;

(c)   At least ten days prior to the revocation of any license, the Director of Inspections and Permits, or designate, shall issue such revocation in writing stating the reasons therefore and shall notify the applicant by certified mail, return receipt requested, or by service at such address or at the licensed premises.

(d)   Subject to subsection (f) of section 8-68, no sexually oriented business shall continue operations after its license has been revoked and no new license shall be issued for the same applicant for five years from the date of revocation.

(e) As used in this section, "material violation: means any violation of the provisions of section 8-61 through section 8-79, inclusive, unless such violation is of a technical nature.


Sec. 8-68. Appeal.

(a)   Within ten days of receipt of notification of a denial, non-renewal, suspension or revocation of a license, the applicant may appeal such decision by submitting a written appeal to the town clerk requesting an appeal hearing before the Town Council.

(b)  Such hearing shall be scheduled no later than twenty days from the date of the appeal filed in accordance with subsection (a). Not less than ten days before the date of such hearing, a notice of hearing shall be sent to the applicant by certified mail, return receipt requested, or by service at such address or at the licensed premises, and shall be posted in a conspicuous place on the proposed or licensed premises.

(c)  At such hearing, the applicant shall have the opportunity to present evidence on its behalf and shall have the right to cross-examine town officials and other witnesses. The Town Council shall conduct the hearing in accordance with the provisions of Chapter 54 of the Connecticut General Statutes.

(d)  Within ten days of the close of such hearing, the Town Council shall either sustain or overrule the denial, non-renewal, suspension or revocation and shall issue written notice of its final decision, stating the reasons therefore, and shall forward such decision to the applicant by certified mail, return receipt requested. If the denial, non-renewal, suspension or revocation is overruled, the Director of Inspections and Permits, or designate, shall immediately issue such license or renewal of license, terminate the suspension or rescind the revocation, as the case may be.

(e)  The decision of the Town Council may be appealed to the superior court within twenty days receipt of written notice of such decision or the applicant may challenge such decision in any court of competent jurisdiction by any available procedure, including a writ of certiorari, a writ of mandamus, a petition for temporary injunction or an action for declaratory or injunctive relief pursuant to 42 U.S.C. § 1983. If any court action challenging the Town Council's decision is initiated, the Town Council shall prepare and transmit to the court a transcript of the hearing within ten days of receipt of written notice of such action. The Town shall consent to an expedited briefing or disposition of the action, shall comply with any expedited schedule set by the court and shall facilitate prompt judicial review of the proceedings.

(f)  During the pendency of any appeal of a non-renewal, suspension or revocation, the sexually oriented business may operate, unless otherwise ordered by the superior court.


Sec. 8-69. Location.

(a)  The provisions of section 503.1.b of the town zoning regulations, as may be amended from time to time, are hereby incorporated by reference, and any violation of such regulations shall be deemed a violation of the provisions of section 8-61 through section 8-79, inclusive.

(b)  The licensed premises of a sexually oriented business shall be at least two hundred and fifty feet from the property line of any property on which any school, college or other institution of higher education licensed by the state of Connecticut, or any portion thereof, is located.

Sec. 8-70. Operating requirements.

(a) The following requirements shall apply to each sexually oriented business within the town:

(1)  No manager or employee of a sexually oriented business shall perform or permit to be performed, offer to perform, or allow patrons to perform any illegal activity on the licensed premises;

(2)  A sexually oriented business shall comply with all applicable statutes, codes, ordinances, laws and regulations including, but not limited to, the fire, building, health, and zoning codes of the town and state;

(3)  A sexually oriented business shall be physically arranged in such a manner that the entire interior portion of any room or other area used for the purpose of viewing live sexually oriented entertainment or live semi-nude entertainment or any depiction of semi-nude bodies, sexual anatomical areas or sexual activity in any media shall be clearly visible and continuously open to view from the common areas of the premises. Visibility into such areas shall not be blocked or obscured by doors, curtains, partitions, drapes or any other obstruction. Such areas shall be readily accessible at all times to employees. There shall be no enclosed booths, cubicles, rooms or stalls within the licensed premises used for such purpose;

(4)  The entire licensed premises shall, at all times during which such business is opened to the public, provide overhead lighting of sufficient intensity to illuminate every place to which patrons are permitted access as follows: (A) for sexually oriented retail stores or theaters, an illumination of no less than twenty foot candles as measured at the floor or ground level; (B) for sexually oriented cabarets, an illumination of no less than five foot candles as measured at the floor or ground level, except during performances during which time illumination shall be no less than two foot candles as measured at the floor or ground level;

(5)  No sexually oriented business shall be conducted in such a manner that permits the observation of any depiction or portrayal of live sexually oriented entertainment, live semi-nude entertainment, sexual anatomical areas, semi-nude bodies or specified sexual activities from outside of the building that houses the sexually oriented business, provided this subdivision shall not prohibit a patron from removing any book, publication or video that the patron has purchased or rented from the licensed premises;

(6)  No sexually oriented business shall advertise the availability at such business of any activity that would be in violation of section 8-61 through section 8-79, inclusive, or any state or federal law. No exterior sign, display, decoration, show window or other advertising of such business shall contain any material depicting or describing live sexually oriented entertainment, live semi-nude entertainment, sexual anatomical areas, semi-nude bodies or sexual activities;

(7)  No alcoholic beverage or other intoxicant shall be displayed, served, ingested or sold on the premises of any sexually oriented business unless permitted by the state and unless the same are allowed under the zoning regulations of the Town of East Hartford. No employee shall be under the influence of any alcoholic beverage or other intoxicant while working at a sexually oriented business. No patron, who is impaired to the extent it would be illegal to serve alcoholic liquor to such patron, shall be allowed to enter the licensed premises;

(8)   No gambling shall be permitted by any person on the licensed premises;

(9)   No one under eighteen years of age, except if such business serves alcoholic beverages, then no applicant or individual shall be under the age of twenty-one years old, shall be allowed on the licensed premises;

(10)   The manager shall be responsible for the conduct of all employees while on the licensed premises. Any act or omission of any employee constituting a violation of the provisions of section 8-61 through section 8-79, inclusive, shall be deemed the act or omission of the manager when such manager knew of such act or omission, for purposes of determining whether the operating license shall be renewed, suspended or revoked and whether the manager shall be subject to the penalties imposed under the provisions of section 8-61 through section 8-79, inclusive;

(11)   No manager shall knowingly employ in any sexually oriented business any person who, within three years of the commencement of such employment, has been convicted in this or any other state of any of the crimes specified in subdivision (9) of subsection (c) of section 8-64, regardless of the pendency of any appeal;

(12)   No manager shall knowingly employ in any sexually oriented business any person who is not a United States citizen or who does not have the legal status or appropriate authorization from the United States government to work in the United States and the State of Connecticut;

(13) A sexually oriented business shall display a sign outside each entrance of such business bearing the words "sexually oriented business. Persons Under 18 Not Admitted" in legible letters between two and six inches tall,  except if such business serves alcoholic beverages, then such sign shall indicate that no person under the age of 21 shall be admitted.

(14)   No sexually oriented business shall open for business before 9:00 a.m., Monday through Sunday, nor shall it remain open after 1:00 a.m.;

(15)   On or before the fifth day of the first month succeeding the issuance of a license pursuant to section 8-65 and on or before the fifth day of each month thereafter, the applicant shall provide the Director of Inspections and Permits, or designate, with a list of the names, driver's licenses, if any, social security number and date of birth of all employees during the preceding month of operation;

(16)   A sexually oriented business shall, at all times during which such business is open to the public, have a manager licensed pursuant to subsection (b) of this section on the licensed premises;

(17)   A sexually oriented business shall maintain a twenty-four hour per day video monitoring system that records activity in all areas of the licensed premises. The manager shall maintain the recordings of such video monitoring for a period not less than ninety days from the last day surveillance was monitored on such tape for the purpose of reviewing for compliance with the provisions of section 8-61 through section 8-79, inclusive, by town officials or employees in the discharge of their duties, upon request; and

(18)    There shall be no loitering in the parking lots or other outside areas used by patrons of the sexually oriented business.  No person shall remain in the parking areas of such business after thirty minutes from the time such business is no longer opened to the public except for access to a person's motor vehicle for purposes of leaving the licensed premises.

(b)  No person shall act in the capacity of a manager of a sexually oriented business without a license from the Director of Inspections and Permits, or designate.  Such person shall file an application with the Director.  Such application shall include the person's name, and any other name previously used by such person, home address, birth certificate, social security number, driver's license, if any, fingerprints and an application fee as established in the Fee Schedule.  The Director shall issue such license within ten days of receipt of the application or shall deny such application if the applicant:  (1) is under the age of twenty-one years; (2) has been convicted of any crimes listed in subdivision (9) of subsection (c) of section 8-64 within ten years of the date of application; or (3) has violated any provision of section 8-61 through section 8-79, inclusive, within three years of the date of application.  Any failure of the Director to approve or deny an application within ten days shall be deemed a denial subject to appeal.  Any applicant who has been denied may appeal such denial in accordance with the provisions of section 8-68.  Any license issued pursuant to this subsection shall expire one year from the date of issuance.

Sec. 8-71. Live adult entertainment.

(a)  In addition to the requirements contained in section 8-70, the following requirements shall apply to all sexually oriented cabaret:

(1)  No person shall engage in live sexually oriented entertainment;

(2)  No person shall perform live semi-nude entertainment for patrons of a sexually oriented business except upon a stage at least eighteen inches above floor level and separated from any and all such patrons by a minimum distance of ten feet or of a greater distance as required by the liquor division of the state department of consumer protection;

(3)  Separate dressing room facilities for male and female sexually oriented entertainers shall be provided that shall not be occupied or used in any way by any person other than such entertainers;

(4)  No sexually oriented entertainer shall, on the licensed premises, expose any sexual anatomical areas to any patron of a sexually oriented business either before or after a performance including, but not limited to, when such entertainer is entering or exiting the stage;

(5)  No sexually oriented entertainer, either before, during or after a performance, shall knowingly or intentionally have physical contact with any patron of a sexually oriented cabaret while on the licensed premises;

(6)   No employee of any sexually oriented cabaret shall engage in any live sexually oriented entertainment or live semi-nude entertainment while acting as a waiter, host or bartender or in any other capacity for such business;

(7)   No payments, tip or gratuity offered to or accepted by a sexually oriented entertainer may be accepted prior to any performance, dance or exhibition provided by such entertainer; and

(8)   No sexually oriented entertainer performing upon any stage area shall be permitted to accept any form of gratuity offered directly to the entertainer by any patron. Any gratuity offered to any entertainer performing upon any stage area must be placed into a permanently affixed, non-movable receptacle provided for receipt of gratuities by the sexually oriented business or provided through a manager.

(b)  No person shall perform live semi-nude entertainment without a license from the Director of Inspections and Permits, or designate.  Such person shall file an application with the Director.  Such application shall include the person's name, and any other name previously used by such person, home address, birth certificate, social security number, driver's license, fingerprints and an application fee established in the Fee Schedule.  The Director shall issue such license within ten days of receipt of the application or shall deny such application if the applicant:  (1) is under the age of twenty-one years; (2) has been convicted of any crimes listed in subdivision (9) of subsection (c) of section 8-64 within ten years of the date of the application; or (3) has violated any provisions of section 8-61 through 8-79, inclusive, within three years of the date of the application. Any failure of the Director to approve or deny an application within ten days shall be deemed a denial subject to appeal. Any applicant who has been denied may appeal such denial in accordance with the provisions of section 8-68. Any license issued pursuant to this subsection shall expire one year from the date of issuance.

Sec. 8-72. Massage parlors.

In addition to the requirements for sexually oriented businesses contained in section 8-70, the following requirements shall apply to all massage parlors within the town:

(1)   Construction of rooms used for toilets, tubs, steam baths and showers shall be waterproofed with approved waterproof materials;

(2)   Toilet facilities shall be provided in convenient locations. When five or more persons of different sexes are on the premises at the same time, separate toilet facilities shall be provided. Toilets shall be designated as to the sex accommodated therein;

(3)  Lavatories or wash basins provided with both hot and cold running water shall be installed in either the toilet room or vestibule. Lavatories or wash basins shall be provided with soap in a dispenser and with sanitary towels;

(4)   Every portion of the massage parlor, including appliances and apparatus, shall be kept clean and operated in a sanitary condition. Adequate lighting shall be provided, and each room or enclosure where a massage is being administered shall

have an illumination of no less than five foot candles as measured at the floor level while such room or enclosure is occupied;

(5)  All employees of the massage parlor shall be clean and wear clean outer garments, which use is restricted to the massage parlor. Provisions for a separate dressing room for each sex must be available on the licensed premises with individual lockers for each employee. Doors to such dressing rooms shall open inward and shall be self-closing;

(6)  All employees and masseurs shall be modestly attired. Diaphanous, flimsy, transparent, form-fitting, or tight clothing is prohibited. Clothing must cover the employee's or masseur's chest at all times. Hemlines of skirts, dresses or other attire may be no higher than three inches above the top of the knee;

(7)  All sexual anatomical areas of patrons must be covered by towels, cloth or undergarments when in the presence of any employee or masseur. No person in a massage parlor to expose his specified anatomical areas to any other person or for any person to expose the specified anatomical areas of another person;

(8)  No person in a massage parlor to engage in any sexual activity or to place his hand upon, to touch with any part of his body, to fondle in any manner, or to massage any sexual anatomical areas of any other person;

(9)  All massage parlors shall be provided with clean, laundered sheets and towels in sufficient quantity and shall be laundered after each use thereof and stored in an approved sanitary manner;

(10)  Wet and dry heat rooms, shower compartments and toilet rooms shall be thoroughly cleaned each day business is in operation. Bathtubs shall be thoroughly cleaned after each use;

(11)  No massage parlor shall place, publish, or distribute or cause to be placed, published, or distributed any advertising material that depicts any portion of the human body or contains any written text that would reasonably suggest to prospective patrons that any services are available other than those services described in the definition of massage parlor in section 8-61, or that employees or masseurs are dressed in any manner other than described in subdivision (6) of this section;

(12)  All services enumerated in the definition of massage parlor in section 8-61 shall be performed in a cubicle, room, booth or area within the massage parlor, which cubicle, room, booth or area shall have transparent doors or walls so that all activity therein shall be visible from outside the same;

(13)  No massage parlor shall open for business before 9:00 a.m. Monday through Sunday, nor remain open after 1:00 a.m.; and

(14)  A full schedule of service rates shall be posted in a prominent place within the massage parlor in such a manner as to come to the attention of all patrons. No charges other than the specified rates for specified services shall be allowed and all patrons shall be notified of the full cost of services prior to the rendering of any service.

Sec. 8-73.  Masseur Permit Required

No person, including an applicant for a massage parlor, shall engage in the practice of massage without first having obtained a masseur permit from the Chief of Police or his designate upon a form provided by the Chief of Police.  The applicant shall pay a filing fee, which shall not be refundable, as set by the Council in the Schedule of Fees.  A permit shall not be required of persons whose practice of massage does not fit within the definition of massage parlor as set forth in section 8-61.

Sec, 8-74.  Masseur Permit Application; Contents; Certificate of Health.

(a)  The application for a masseur permit shall contain the following:

(1)  Name, and any other name previously used by such person, and resident's address;

(2)  Social Security Number and date of birth;

(3)  Applicant's weight, height, color of hair and eyes, and fingerprints;

(4)  Written evidence that the applicant is at least eighteen years of age;

(5)  Business, occupation, or employment of the applicant for three years immediately preceding date of application;

(6)  Whether such person has ever been convicted of any crime within the last ten years except minor traffic violations and if so convicted, the place and court in which the conviction was obtained and the sentence imposed as a result of such conviction; and

(7)  Name and address of the recognized school attended, the date attended, and a copy of the diploma or certificate of graduation awarded the applicant, showing the applicant has successfully completed not less than seventy hours of instruction.

(b)  Any masseur so employed is required to present a certificate from a physician licensed to practice in the State of Connecticut stating that the applicant has been examined and found to be free of any contagious or communicable disease and showing that the examination was conducted within thirty days prior to the submission of the application.

Sec. 8-75.  Applicability to Masseurs Without Educational Requirements.

(a)  Applicants for a masseur permit may substitute one year's continuous experience as a Masseur or masseuse in lieu of a requirement of a diploma or certificate of graduation from a recognized school or other institution of learning wherein the method and work of massage is taught.  Such masseur must obtain an affidavit attesting to such experience from the owner of the establishment where the continuous year of experience occurred.  If, after diligent effort, the masseur is unable to obtain an affidavit from the owner, such masseur may submit an affidavit from a person who has first hand knowledge of his or her continuous year of experience.

(b)   Qualified instructions in the art of massage shall not be required to obtain a masseur permit unless such instructor engages in the practice of massage.


Sec. 8-76.   Issuance of Masseur Permit.

The Chief of Police or his designate shall issue a masseur permit within twenty-one days following application, unless he find that the applicant for the masseur permit has been convicted of: (1) a felony; (2) an offense involving sexual misconduct with minors; or (3) obscenity, keeping or residing in a house of ill fame, solicitation of a lewd or unlawful act, prostitution or pandering.  Any applicant who has been denied may appeal such denial in accordance with the provisions of section 8-68.

Sec. 8-77.   Revocation of Masseur Permit.

(a)   A masseur permit issued by the Chief of Police or his designate shall be revoked or suspended after a hearing before the Chief of Police where it appears that the masseur has been convicted of any offense enumerated in section 8-76.

(b)   The Chief of Police or his designate, before revoking or suspending any masseur permit, shall give the masseur at least ten days written notice of the examination into his conviction record and the opportunity for a hearing before the Chief of Police, at which hearing, the Chief of Police or his designate shall determine the relevant facts regarding the occurrences of the conviction. Any person whose masseur permit has been suspended or revoked may appeal such revocation or suspension in accordance with the provisions of section 8-68.

Sec. 8-78.   Register of Patrons.

(a)   Every person who engages in or operates a massage parlor shall keep a daily register, approved as to form by the Chief of Police or his designate, of all patrons with names, addresses and hours of arrival and, if applicable, the rooms or cubicles assigned.  The daily register shall at all times during business hours be subject to inspection by the Department of Public Health and Social Services officials and by the Police Department and shall be kept on file for one year.

(b)   No person shall give, sign or use any false name or address in the daily register required to be kept by the massage establishment.


Sec. 8-79.   Opposite Sex Massage prohibited/Outcall Massage.

(a)   No person holding a permit under this Article shall treat a person of the opposite sex, except upon the signed order of a licensed physician, osteopath, chiropractor, or registered physical therapist, which order shall be dated and shall specifically state the number of treatments, not to exceed ten.  The date and hour of each treatment given and the name of the operator shall be entered on such order by the establishment where such treatments are given and shall be subject to inspection by the police.

(b)   No permittee shall administer massage on an outcall basis.  Such person shall administer massage solely with a massage parlor licensed to carry on such business. Any violation of these provisions shall be deemed grounds for revocation of the masseur permit and sexually oriented business license granted hereunder.

(c)   No manager of a massage parlor shall knowingly cause, allow or permit, any agent, employee, or any other person under his control or supervision to perform acts prohibited in subsections (a) and (b) of this section or in the provisions of section 8-72 through section 8-79, inclusive, in or about such massage parlor.


Voted: 08-26-08

Published: 08-29-08

Effective: 09-19-08

Attest_____
            Angela Attenello
            Town Council Clerk

Attest_____
            Melody A. Currey

Date_____